1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN EILEEN GNIBUS, | No.  2:15-cv-1669 AC |
| Plaintiff, | |
| v. | **ORDER** |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[2]  For the reasons that follow, plaintiff's motion for summary judgment will be granted, and defendant's cross-motion for summary judgment will be denied.  The matter will be remanded to the Commissioner for the payment of benefits to plaintiff.

---

[1]  On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration.  See https://www.ssa.gov/agency/commissioner.html (last visited by the court on March 11, 2017).  She is therefore substituted as the defendant in this action.  See 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New York, 476 U.S. 467, 470 (1986).

1

# I.   PROCEDURAL BACKGROUND

2      Plaintiff applied for DIB on February 1, 2012.  Administrative Record ("AR") 14

3  (decision).[3]  The disability onset date was alleged to be April 3, 2011.  Id.  The application was

4  disapproved initially and on reconsideration.  Id.  On October 23, 2013, Administrative Law

5  Judge ("ALJ") John Heyer presided over the hearing on plaintiff's challenge to the disapprovals.

6  AR 30-66 (transcript).  Plaintiff was present and testified at the hearing.  She was represented by

7  the hearing by her counsel, Charles Oren, Esq.  Thomas C. Dachelet, a Vocational Expert ("VE"),

8  also testified at the hearing.

9      On December 2, 2013, the ALJ found plaintiff "not disabled" under Sections 216(i) and

10  223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 14-25 (decision), 26-29 (exhibit

11  list).  On June 11, 2015, after receiving additional exhibits, the Appeals Council denied plaintiff's

12  request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social

13  Security.  AR 1-5 (decision, additional exhibit list, order).

14      Plaintiff filed this action on August 5, 2015.  ECF No. 1; see 42 U.S.C. § 405(g).  The

15  parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 7, 8.  The parties' cross-

16  motions for summary judgment, based upon the Administrative Record filed by the

17  Commissioner, have been fully briefed.  ECF Nos. 12 (plaintiff's summary judgment motion), 17

18  (Commissioner's summary judgment motion).

19

# II.   FACTUAL BACKGROUND

20      Plaintiff was born on January 22, 1971, and accordingly was, at age 40, a younger person

21  under the regulations, when she filed her application.[4]  AR 24.  Plaintiff has at least a high school

22  education, and can communicate in English.  AR 24.

23      Plaintiff has a history of spine surgeries.  On January 11, 2005, plaintiff underwent spine

24  surgery.  AR 20, 231-32 (Exh. 2F).  The "Preoperative Diagnosis" included "cauda equina

25  syndrome with bilateral lumbosacral radiculopathy."  AR 231.[5]  The "Postoperative Diagnosis"

---

26  [3]  The AR is electronically filed at ECF Nos. 11-1 to 11-11 (AR 1 to AR 498).  The paper copy is lodged with the Clerk of the Court.  ECF No. 11.

27  [4]  See 20 C.F.R. § 404.1563(c) ("Younger person").

28  [5]  "Cauda equina syndrome" is the "involvement, often asymmetric, of multiple roots making up

1   included "severe neural compression of the cauda equina and the L-5 and S-1 nerve roots."

2   AR 231.[6]  On March 13, 2006, plaintiff underwent another surgery on her spine.  AR 20, 234-35

3   (Exh. 2F).  The pre-operative and post-operative diagnoses both included "Failed back syndrome

4   – degenerative facet arthropathy status post previous left L5-S1 diskectomy,"[7] and "Lumbar

5   radiculopathy – recurrent."  AR 234.[8]  On February 27, 2012, plaintiff underwent another surgery

6   on her spine.  AR 21, 236-37 (Exh. 2F).  The preoperative diagnosis included "severe mechanical

7   back pain [and] leg radiculopathy, bilateral."  AR 236.[9]

8                                              III.    LEGAL STANDARDS

9          The Commissioner's decision that a claimant is not disabled will be upheld "if it is

10   supported by substantial evidence and if the Commissioner applied the correct legal standards."

11   Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the

12   Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'"  Andrews

13   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

14          Substantial evidence is "more than a mere scintilla," but "may be less than a

15   preponderance."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such

16   evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.

17   Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the

18

19   _____

20   the cauda equina (i.e., L2–S3 roots), manifested by pain, paresthesia, and weakness."  Stedmans
     Medical Dictionary § 877880.  "Paresthesia" is a "spontaneous abnormal usually nonpainful
     sensation (e.g., burning, pricking) …."  Stedmans Medical Dictionary § 653800.  Other pre-

21   operative diagnoses were "Ruptured and extruded L5-S1 disc, severe spinal stenosis, foraminal
     stenosis, … progression of symptoms and failure of conservative therapy."  AR 231.  "Stenosis"

22   is a "stricture of any canal or orifice."  Stedmans Medical Dictionary § 848390.

23   [6]  Other post-operative diagnoses were "Ruptured and extruded L5-S1 disc with large ruptured
     free fragment, … [and] neurospinal instability."  AR 231.  Among the surgeon's prognoses was

24   that plaintiff "may always have some weakness and numbness."  AR 232.

     [7]  "Facet" is a "small smooth area on a bone or other firm structure, usually an articular surface

25   covered in life with articular cartilage."  Stedmans Medical Dictionary § 313360.  "Arthropathy"
     is "[a]ny disease affecting a joint."  Stedmans Medical Dictionary § 76130.

26   [8]  The pre- and post-operative diagnoses also included "L4-5, L5-Sl degenerative disc disease –
     mechanical back instability."  AR 234.

27   [9]  The post-operative diagnosis was "Spinal stenosis, rather severe inclusive of L3 and L4, with
     gross evidence of the spinal instability above the area of the previous fusion."  AR 236.

28

                                                              3

1   record can constitute substantial evidence, only those 'reasonably drawn from the record' will

2   suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

3   Although this court cannot substitute its discretion for that of the Commissioner, the court

4   nonetheless must review the record as a whole, "weighing both the evidence that supports and the

5   evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS,

6   846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The

7   court must consider both evidence that supports and evidence that detracts from the ALJ's

8   conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

9        "The ALJ is responsible for determining credibility, resolving conflicts in medical

10   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th

11   Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of

12   which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart,

13   278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the

14   ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn

15   v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

16   2003) ("It was error for the district court to affirm the ALJ's credibility decision based on

17   evidence that the ALJ did not discuss").

18        The court will not reverse the Commissioner's decision if it is based on harmless error,

19   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

20   ultimate nondisability determination.'" Robbins v. SSA, 466 F.3d 880, 885 (9th Cir. 2006)

21   (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

22   Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

23                    IV.    RELEVANT LAW

24        Disability Insurance Benefits and Supplemental Security Income are available for every

25   eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff

26   is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically

27   determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987)

28   (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

4

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id. §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id. §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id. §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id. §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

////

////

5

1

## V.   THE ALJ's DECISION

2

The ALJ made the following findings:

3

4

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

5

6

2. [Step 1] The claimant has not engaged in substantial gainful activity since April 3, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).

7

8

9

3. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, status post three surgical procedures; degenerative disc disease of the cervical spine, status post-surgery; osteoporosis in the hips and spine; and chronic pain syndrome (20 CFR 404.1520(c)).

10

11

12

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

13

14

15

5. The evidence does not establish that the claimant's impairments, individually or in combination, meet or equal in severity any listed impairment(s). *A more detailed discussion of the evidence is embodied in the residual functional capacity analysis in Finding 5.*

16

17

18

6. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and can complete an eight hour workday, if given the option to alternate between sitting and standing, as needed, in up to 30 minute increments.

19

20

7. [Step 4] The claimant is unable to perform any past relevant work (20 CFR 404.1565).

21

22

8. [Age] The claimant was born on January 22, 1971 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

23

9. [Education] The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

24

25

26

27

10. [Transferability of job skills] Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

28

11. [Step 5] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

12. The claimant has not been under a disability, as defined in the Social Security Act, from April 3, 2011, through the date of this decision (20 CFR 404.1520(g)).

AR 16-25 (emphasis added).[10]

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 25.

VI.    ANALYSIS

Plaintiff alleges that the ALJ erred at Step 3 of the sequential evaluation by failing to find that plaintiff met or equaled the severity of Listing of Impairments ("Listings"), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A ("Disorders of the spine").[11]

A.  Plaintiff Meets Listings § 1.04A

A claimant will be found to be disabled if she "meets" or "equals" an impairment in the Listings.  20 C.F.R. § 404.1520(d); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990) ("[i]f the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies").  In order to "meet" Listings § 1.04A, plaintiff must show that her spinal disorder results in "compromise of a nerve root (including the cauda equina) or the spinal cord," with *all* of the following:

[1] Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, [4] if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

[10]  Plaintiff contends that the Step 3 analysis never occurred, despite the ALJ's promise in the emphasized text that such analysis would appear in discussion of residual functional capacity ("Finding 5").  As discussed below, the court agrees with plaintiff.

[11]  Plaintiff also argues that the ALJ erred by improperly deviating from the Dictionary of Occupational Titles ("DOT"), failing to properly assess the opinions of the treating physician regarding plaintiff's functional limitations, and improperly rejecting plaintiff's testimony. Because the uncontested medical evidence shows that the ALJ was required to find that plaintiff met Listings § 1.04A, the court does not address these other asserted errors.

Listings 1.04A (emphasis added); Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in text) (citing SSR 83–19).

1.   Nerve root compression and neuro-anatomic distribution of pain

As the ALJ appears to acknowledge, plaintiff presented evidence of nerve root compression.  See AR 20 (ALJ: "The record reveals that the claimant … required … a repeat lumbar root decompression, citing "Ex. 2F"), 231 (Imran Fayaz, M.D., Surgeon (2005): "severe neural compression of the cauda equina and the L-5 and S-1 nerve roots"), 234 (Majid Rahimifar, M.D., Surgeon (2006): performed "A 360-degree fusion with re-do lumbar decompressive procedure"), 237 (Dr. Rahimifar (2012): "Extensive foraminal decompression was performed").

Plaintiff argues that "neuro-anatomic distribution of pain" includes, or is evidenced by, "radiculopathy," and the Commissioner does not dispute this.[12]  See ECF No. 12 at 7. Radiculopathy is:

> dysfunction of a nerve root often caused by compression of the root.  Pain, sensory impairment, weakness or depression of deep tendon reflexes may be noticed in the distribution of nerves derived from the involved nerve root.

7 Attorneys Medical Advisor § 71:3.  Accordingly, the court agrees that evidence of radiculopathy is sufficient to meet this requirement.  See Greene v. Colvin, 999 F. Supp. 2d 845, 847 (E.D.N.C. 2014) (referring to "neuro-anatomical distribution of pain such as lumbar radiculopathy").

Plaintiff has presented uncontested evidence of such pain.  On January 11, 2005, plaintiff was diagnosed with "cauda equina syndrome with bilateral lumbosacral radiculopathy."  AR 231 (Dr. Fayaz).  On March 13, 2006, plaintiff was diagnosed with "Lumbar radiculopathy – recurrent."  AR 234 (Dr. Rahimifar).  November 2, 2011, plaintiff was diagnosed with "radicular symptoms going down the left leg."  AR 268 (Exh. 4F) (Jan Mensink, M.D.).  On February 27,

---

[12]  "Neuroanatomy" is the "anatomy of the nervous system, usually specific to the central nervous system."  Stedmans Medical Dictionary § 600200.

2012, plaintiff was diagnosed with "leg radiculopathy." AR 241 (Dr. Rahimifar). On February 21, 2013, plaintiff was diagnosed with "Lumbosacral radiculopathy." AR 375 (Exh. 11F) (Ashok M. Parmar, M.D.).[13]

The ALJ does not reject the evidence that plaintiff suffered pain from her nerve root dysfunction. The ALJ does find that there was a finding of no *cervical* radiculopathy,[14] and that plaintiff's complaints of pain were exaggerated. See AR 20. However, neither finding is inconsistent with plaintiff's evidence regarding *lumbar* radiculopathy and the *existence* of pain resulting from her nerve root dysfunction.

### 2.   Limitation of motion of the spine

Plaintiff has presented uncontested evidence of limitation of motion of the spine. See AR 330 (Exh. 7F) (Juliane Tran, M.D., May 7, 2012) ("The claimant at this time has reduced range of motion of the lumbosacral spine …."); 374 (Exh. 11F) (Dr. Parmar, February 21, 2013) ("RANGE OF MOTION: Lumbar flexion is limited to only 25 degrees with back pain. Lumbar extension lacks about 5-10 degrees to neutral due to back pain").[15]

The ALJ does not dispute or address this evidence. On appeal, the Commissioner cites evidence that plaintiff had "a good range of motion in her *cervical* spine …." ECF No. 17 at 7 (emphasis added). This observation is irrelevant, however, because (1) it does not contradict evidence that plaintiff's range of motion in her *lumbosacral* spine was limited, and (2) the ALJ does not mention it as a ground for rejecting the Listings § 1.04A claim.

### 3.   Motor loss and weakness accompanied by sensory loss

Plaintiff presented evidence of motor loss and weakness accompanied by sensory loss. See AR 232 (Dr. Fayaz, post-surgery: "she may always have some weakness and numbness"), 268 (Dr. Mensink, November 2, 2011: "This patient continues to have low back pain with

---

[13]  In addition to these diagnoses, plaintiff also complained of "radicular symptoms." AR 258 (Jan Mensink, M.D., March 19, 2012), 329 ("subjective radicular symptoms"),

[14]  "Cervical" radiculopathy is a neck condition. "Lumbar" radiculopathy is a lower back condition.

[15]  See also, AR 412 (Exh. 12F) (Mike Marotta, P.T., June 15, 2012) ("Assessment: Patient has tolerated physical therapy well, although pain continues to limit mobility of the spine").

1  bilateral leg cramps and weakness"), 274 (Dr. Mensink, August 23, 2011: "Strength: In the upper

2  and lower extremities is generally weak throughout but is symmetrical and I think it is due to pain

3  and lack of effort"), 296 (Exh. 4F) (Hamid R. Salehi, M.D., October 14, 2011) ("Sensory and

4  motor studies show axonal loss and slowing in left tibial nerve"),[16] 264 (Dr. Rahimifar, January

5  19, 2012) ("Patient has severe, recurrent mechanical back pain with bilateral lower extremity

6  weakness and numbness, with frequent falls), 330 (Dr. Tran, May 7, 2012) ("SENSORY EXAM:

7  Normal in both upper extremities; reduced in the left leg in approximately the left L5-Sl

8  dermatomes"), 342 (Exh. 9F) (David Field, M.D., MPH, September 21, 2012) ("Decreased

9  sensory of the C6 dermatome bilaterally which is minimal"), 374 (Dr. Parmar, February 21, 2013)

10 ("SENSATION: Reduced to pinprick in the left lower extremity and approximately left S1

11 dermatome").

12      On appeal, the Commissioner identifies a single piece of evidence from Dr. Mensink, to

13 argue that plaintiff did not meet the "weakness" requirement of Listings § 1.04A.  See ECF

14 No. 17 at 15 ("in July 2011, Plaintiff had normal muscle tone and intact strength in her

15 extremities") (citing AR 20, 278).  However, as recited above, every other piece of evidence in

16 the record – including subsequent reports from Dr. Mensink – shows that plaintiff did have

17 weakness in her lower extremities.  Although the ALJ mentions this one piece of evidence, he

18 does not explain why this piece of evidence outweighed all the other evidence to the contrary in

19 the record.  This court "must consider the entire record as a whole and may not affirm simply by

20 isolating a specific quantum of supporting evidence."  Robbins, 466 F.3d at 882 (internal

21 quotations marks omitted).[17]

---

[16]  An axon is "[t]he single process of a nerve cell that under normal conditions conducts nervous impulses away from the cell body and its remaining processes (dendrites)."  Stedmans Medical Dictionary § 89940.

[17]  The Commissioner argues that it was not error for the ALJ to put his Step 3 analysis in the residual functional capacity analysis, citing Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001). See ECF No. 17 at 13; AR 18 ("[a] more detailed discussion of the evidence is embodied in the residual functional capacity analysis in Finding 5").  The Commissioner is correct on the law. However, aside from the single reference to the cherry-picked "weakness" finding, the Commissioner does not identify where in the decision the ALJ discusses the other parts of the (continued…)

1        4.   Positive straight-leg raising test

2        As the ALJ acknowledges, plaintiff has presented evidence of positive straight-leg tests.

3   See AR 20, 21, 371 (Dr. Parmar, February 21, 2013) ("SLR" marked "+" for both "R" and "L"),

4   374 ("STRAIGHT LEG RAISING TESTS: Positive in bilateral lower extremities with radicular

5   symptoms to the right and also left lower extremity").  The ALJ does not dispute this evidence.

6        B.   Waiver

7        As discussed above, plaintiff has presented evidence showing that plaintiff "meets"

8   Listings § 1.04A.  On appeal, the Commissioner argues that plaintiff has waived the claim

9   because it was not presented to the ALJ, citing Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir.

10  1999).[18]  There was no waiver here.  Plaintiff explicitly argued to the ALJ that he should find that

11  plaintiff met Listings § 1.04, even if it could have been more artfully put:

12              I also think -- you know, I think that the listing ought to be
               considered about -- *under 1.04 in this case*.  I mean, you've got a
13             doctor admitting that there's two failed surgeries, and she's had an
               additional surgery on her back, and she does at least have spasming
14             on the neck that's shown up and objectively, and there's showings
               on the MRI on her low back following the last surgery that shows
15             up in the last 15-F.  I mean, there's every reason to believe that this
               is not someone that can -- *that meets a listing level*, and the RFC
16             would be such that she wouldn't be able to work.

17  AR 64 (emphases added).

18  ////

19

20  Listings § 1.04A analysis.  The court was unable to find any such discussion that may be buried
    in the RFC analysis, or elsewhere.
21  [18]  But see Sims v. Apfel, 530 U.S. 103 (2000).  In Sims, "the Supreme Court indicated that
    judicially created issue exhaustion is not always appropriate."  Alaska Survival v. Surface Transp.
22  Bd., 705 F.3d 1073, 1080 (9th Cir. 2013).  It further held that the reasons for imposing issue
    exhaustion on some administrative proceedings did not apply to social security disability
23  determinations, as they are non-adversarial proceedings, and no statute or regulation requires
    issue exhaustion.  Sims, 530 U.S. at 105-10.  The Court was not able resolve the question of
24  whether issue exhaustion should apply, with only a Plurality holding that "judicially created
    issue-exhaustion requirement is inappropriate" in the social security context.  See Sims, 530 U.S.
25  at 112 (Opinion of Thomas, J.).  However, the Ninth Circuit, post-Sims, treats the Meanel
    decision as a dead letter, at least as it regards failure to raise issues before the Appeals Council.
26  See Edlund, 253 F.3d at 1160 n.9 ("[T]he Commissioner argues that Edlund waived this claim for
    failure to raise it with the Appeals Council and in the district court.  The SSA's argument *with
27  respect to the Appeals Council* is foreclosed by the recent holding in Sims v. Apfel …")
    (emphasis added).

28

11

1          C.  Duration

2          Defendant argues that plaintiff failed to "satisfy the 12-month duration requirement."

3   ECF No. 17 at 16, citing 20 C.F.R. § 404.1509.  That is not correct.  The evidence shows that

4   plaintiff meets the duration requirement.  As discussed above, plaintiff has presented uncontested

5   evidence showing that she met Listings § 1.04A starting in 2005, and continuing through 2013.

6                              VII.     REMAND

7          As discussed above, the ALJ erred at Step 3 in failing to find that plaintiff met Listings

8   § 1.04A.  That error is not harmless because if plaintiff meets the Listings, she is disabled, and no

9   further inquiry is required.  20 C.F.R. § 404.1520(d) ("[i]f you have an impairment(s) which

10  meets the duration requirement and is listed in appendix 1 … we will find you disabled without

11  considering your age, education, and work experience"); Lester v. Chater, 81 F.3d 821, 828 (9th

12  Cir. 1996) ("[c]onditions contained in the 'Listing of Impairments' are considered so severe that

13  they are irrebuttably presumed disabling").

14         Accordingly, the court is authorized "to 'revers[e] the decision of the Commissioner of

15  Social Security, with or without remanding the cause for a rehearing.'"  Treichler v. Comm'r of

16  Social Security Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).  "[W]here the record has been

17  developed fully and further administrative proceedings would serve no useful purpose, the district

18  court should remand for an immediate award of benefits."  Benecke v. Barnhart, 379 F.3d 587,

19  593 (9th Cir. 2004).

20         More specifically, the district court should credit evidence that was rejected during the

21  administrative process and remand for an immediate award of benefits if (1) the ALJ failed to

22  provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues

23  that must be resolved before a determination of disability can be made; and (3) it is clear from the

24  record that the ALJ would be required to find the claimant disabled were such evidence credited.

25  Benecke, 379 F.3d at 593 (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert.

26  denied, 531 U.S. 1038 (2000)).

27         A.  Rejecting Evidence

28         By finding that plaintiff did not meet Listings § 1.04A, the ALJ necessarily rejected the

12

opinions of plaintiff's treating physicians and surgeons, discussed above, who provided medical evidence of the requirements of that Listings.  The ALJ offers no explanation for why he silently rejected the opinions of Dr. Rahimifar (plaintiff's treating surgeon), Dr. Fayaz (another of plaintiff's treating surgeons), Dr. Mensink (a treating doctor), and Dr. Parmar (another treating doctor), which establish that plaintiff exhibited the medical evidence of the first part of Listings § 1.04A ("Nerve root compression and neuro-anatomic distribution of pain"), set forth above.[19]

The ALJ offers no explanation for his silent rejection of the opinions of Dr. Tran (an examining doctor), and Dr. Parmar, which establish that plaintiff exhibited the medical evidence of the second part of Listings § 1.04A ("Limitation of motion of the spine"), set forth above.[20]

The ALJ offers no explanation for his silent rejection of the opinions of Dr. Fayaz, Dr. Mensink, Dr. Salehi (who appears to be an examining doctor), Dr. Rahimifar, Dr. Tran, David Field, M.D., MPH (a treating doctor), and Dr. Parmar, which establish that plaintiff exhibited the medical evidence of the third part of Listings § 1.04A ("Motor loss and weakness accompanied by sensory loss"), set forth above.

The ALJ offers no explanation for his silent rejection of the opinions of Dr. Parmar, which establish that plaintiff exhibited the medical evidence of the fourth part of Listings § 1.04A ("Positive straight-leg raising test"), set forth above.

Indeed, it is not even clear from the decision that the ALJ actually rejected the opinions recited above.  Regardless of whether those opinions were rejected or not, the ALJ presented no valid reasons for rejecting them, and accordingly they will be credited as true.

---

[19]  The ALJ discussed Dr. Rahimifar's opinions at length as they related to the doctor's views on plaintiff's functionality.  AR 22-23.  But nothing in that discussion makes any reference to Dr. Rahimifar's opinion regarding plaintiff's lumbar radiculopathy, which relates directly to Listings § 1.04A ("neuro-anatomic distribution of pain").  Dr. Rahimifar's views on plaintiff's functionality, and the ALJ's rejection of those views (at Steps 4 and 5), are irrelevant where, as here, plaintiff must be found disabled because she meets the requirements of Step 3.  Lewis, 236 F.3d at 512 ("[i]f a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs") (citing 20 C.F.R. § 404.1520(d)).

[20]  The ALJ discussed Dr. Tran's opinions regarding plaintiff's functionality.  AR 22.  But this discussion does not pertain to the Listings opinion, and is therefore not pertinent.

1

2        B.  Outstanding issues

3        Under the second step in the remand analysis, the court must "review the record as a

4 whole and determine whether it is fully developed, is free from conflicts and ambiguities, and 'all

5 essential factual issues have been resolved.'"  Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir.

6 2016) (quoting Treichler, 775 F.3d at 1101).  This step is satisfied here.

7        Unlike the situation in Dominguez, there is no internal conflict or ambiguity in the

8 medical evidence showing that plaintiff meets Listings § 1.04A.  As plaintiff points out, the ALJ

9 was free to request additional evidence.  However, the court knows of no grounds for requiring

10 additional evidence when the existing evidentiary record shows that plaintiff meets the Listings.

11        C.  Crediting the Doctors' Opinions as True

12        Under the third step in the remand analysis, this court "must next consider whether the

13 ALJ would be required to find the claimant disabled on remand if the improperly discredited

14 evidence were credited as true."  Dominguez, 808 F.3d at 407 (internal quotation marks omitted).

15 If the above-cited opinions were credited as true plaintiff would necessarily be found disabled.

16 Specifically, the opinions show that plaintiff satisfied every part of Listings § 1.04A.

17 Accordingly, plaintiff enjoys an irrebuttable presumption of disability.  Lester, 81 F.3d at 828

18 ("[c]onditions contained in the 'Listing of Impairments' are considered so severe that they are

19 irrebuttably presumed disabling").

20        D.  Discretion

21        Where the above steps are satisfied, this court must exercise its discretion in determining

22 whether to remand for further proceedings, or for the immediate calculation and award of

23 benefits.  Dominguez, 808 F.3d at 407 (if disability finding would necessarily follow if

24 discredited evidence were credited as true, "the district court may exercise its discretion to

25 remand the case for an award of benefits").  If, despite satisfying the above steps, the "record as a

26 whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of

27 the Social Security Act," the court should remand for further proceedings.  Burrell v. Colvin, 775

28 F.3d 1133, 1141 (9th Cir. 2014) (quoting Garrison, 759 F.3d at 1021).  However, the court would

14

be "abus[ing] its discretion by remanding for further proceedings where the credit-as-true rule is satisfied and the record afforded no reason to believe that [the plaintiff] is not, in fact, disabled." Garrison, 759 F.3d at 1021.

Here, the court sees nothing in the record to create a doubt that the plaintiff is disabled within the meaning of the Act.

VIII.    CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is DENIED;

3. This matter is REMANDED to the Commissioner for the immediate calculation and payment of benefits to plaintiff; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: March 13, 2017

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

15